**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TAMMY ELAINE MUSGROVE,

                Plaintiff,

                                        Case No. 3:15-cv-30-J-34JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

### I.  Status

      Tammy Elaine Musgrove ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB").  Plaintiff's alleged inability to work is the result of "[t]otal hip replacement," "calcium build up elbow," "silicone leakage due to accident (hairloss)," "arthritis full body," "scoliosis in back," "muscle aches entire body," "emotional stress," "[l]eft hip," "right arm problems," "[b]ursitis," "[a]vascular necrosis," "[e]xtreme [f]atigue," and "[l]ateral [e]picondylitis."  See Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed March 25, 2015, at 184.  On August 2, 2011, Plaintiff filed an application for DIB, alleging an

---

    [1]       "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  Id.  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

onset date of December 9, 2010.  Tr. at 165-66.  Plaintiff's application was denied initially, Tr. at 61-72, 100-01, and was denied upon reconsideration, Tr. at 73-99, 105-07.

On March 25, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from a vocational expert ("VE") and Plaintiff, who was represented by counsel.  Tr. at 35-57.  At the time of the hearing, Plaintiff was forty-nine (49) years old. See Tr. at 165 (Plaintiff's DIB application indicating her date of birth).  On May 30, 2013, the ALJ issued a Decision finding Plaintiff not disabled "from December 9, 2010, through the date of th[e] [D]ecision."  Tr. at 28; see Tr. at 17-28.  Plaintiff then requested review by the Appeals Council, Tr. at 59, and submitted evidence to the Council in the form of a brief authored by her attorney representative, Tr. at 4; see Tr. at 267-72 (representative's brief). On November 14, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner.  On January 14, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: (1) whether "the ALJ failed to properly weigh the medical evidence"; (2) whether "the ALJ failed to properly evaluate Plaintiff's credibility"; and (3) whether "the ALJ relied on flawed vocational expert testimony."  Plaintiff's Memorandum of Law in Support of Her Position (Doc. No. 12; "Pl.'s Mem."), filed May 5, 2015, at 10-18 (emphasis and some capitalization omitted).  Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") on September 22, 2015.  After a thorough review of the entire record and consideration of the parties'

respective filings, the undersigned recommends that the Commissioner's final decision be affirmed for the reasons stated in this Report and Recommendation.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry.  See Tr. at 19-28.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 9, 2010, the alleged onset date."  Tr. at 19 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia, history of left hip avascular necrosis status post total hip arthroplasty, pain disorder, and major depressive disorder."  Tr. at 19 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically

---

[2]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR 404.1567(b) except with a 30 minute sit/stand option. [Plaintiff] should not climb, crouch, or crawl. The other postural activities would be occasional. [Plaintiff] should not use the lower extremities to operate foot controls. [Plaintiff] should not have concentrated exposure to vibrations, work around moving mechanical parts, or work at unprotected heights. [Plaintiff] is limited to performing simple, routine, repetitive tasks. [Plaintiff] is able to relate adequately to coworkers, the general public, and supervisors. [Plaintiff] would need changes in the workplace infrequent and gradually introduced.

Tr. at 21-22 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "food service manager" or "dental hygienist." Tr. at 26 (emphasis, citation, and some capitalization omitted). At step five, the ALJ considered Plaintiff's age (forty-seven (47) years old on the alleged disability onset date), Tr. at 26, as well as her education ("at least a high school education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 27 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs a "ticket taker," a "cashier II," and a "ticket seller." Tr. at 27 (some capitalization omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from December 9, 2010, through the date of th[e] [D]ecision." Tr. at 28 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'"  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

For ease of discussion, Plaintiff's three issues are addressed below in this order: (1) whether "the ALJ failed to properly evaluate Plaintiff's credibility"; (2) whether "the ALJ failed

to properly weigh the medical evidence"; and (3) whether "the ALJ relied on flawed vocational expert testimony." Pl.'s Mem. at 10-18 (emphasis and some capitalization omitted).

## A. Credibility Finding

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). An ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence."

Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, the ALJ found "that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. at 22.  Elsewhere in the Decision, the ALJ stated as follows:

> Despite the severity of [Plaintiff]'s subjective complaints, there is minimal objective evidence of a disabling impairment.  For example, [Plaintiff]'s activities of daily living are not as limited as one would expect given her complaints.  [Plaintiff] testified that she is able to perform light housekeeping activities during the day.  She prepares supper with the help of her daughter and/or husband, and [her] eleven-year-old daughter is homeschooled.  In addition, the treatment notes from Copeland Medical Clinic indicate that physical therapy was beneficial.

Tr. at 26 (citation omitted).

Plaintiff contends that "[t]he ALJ's brief credibility determination was insufficient" because Plaintiff's allegations are supported by objective evidence and also because "a claimant's allegations cannot be rejected simply 'because the available objective medical evidence does not substantiate [the claimant's] statements.'"  Pl.'s Mem. at 16 (quoting 20 C.F.R. § 404.1529(c)(2)).  Notwithstanding Plaintiff's point, it is clear the ALJ's credibility finding did not rely solely on whether objective medical evidence supported Plaintiff's allegations.  To the contrary, the ALJ followed his statement about "minimal objective evidence" by discussing Plaintiff's activities of daily living and physical therapy.  See Tr. at 26.

Plaintiff disputes the ALJ's reliance on her household activities, contending that her ability to perform certain limited household activities "is not equivalent with a finding that

Plaintiff can perform a full-time job on a sustained basis 8 hours a day, 40 hours a week." Pl.'s Mem. at 16-17 (citation omitted).   The issue, however, is not whether Plaintiff's testimony alone supports the ALJ's disability finding, but whether the ALJ properly relied on the testimony in his credibility finding.

According to Plaintiff's hearing testimony, she is capable of a range of household activities, although she requires frequent breaks and occasional assistance.  Plaintiff testified, for instance, that she does "light cleaning around the house" and "tr[ies] to cook supper for [her] family every night, with the help of [her] daughter and sometimes [her] husband."  Tr. at 46.  She also stated that she sometimes cleans laundry and dishes, taking breaks about every ten or fifteen minutes.  Tr. at 46-47, 52.  She stated that she "pretty much can't" sweep or vacuum because when she does, she is "in so much pain [she] can hardly stand it."  Tr. at 46.  She testified that she needs help getting out of the bathtub and "getting ready in the mornings" but otherwise "pretty much . . . [does] everything on [her] own."  Tr. at 47.  She also stated that she "can get [her]self dressed and ready" and "usually go[es] grocery shopping."  Tr. at 48.  Regardless of whether Plaintiff's testimony itself establishes that Plaintiff is capable of full-time employment, it supports the ALJ's conclusion that Plaintiff's abilities are not as limited as her complaints suggest.  See Tr. at 26.  The ALJ properly relied on this testimony as a basis for his finding that Plaintiff's statements about her symptoms "are not entirely credible."  Tr. at 22

Plaintiff also disputes the ALJ's suggestion that the helpfulness of physical therapy supports a finding that she is not disabled.  Pl.'s Mem. at 17.  Although the one physical therapy treatment note from Copeland Medical Clinic included in the record is unclear and

contains little information about Plaintiff's status or progress, it does appear to indicate that Plaintiff's hip is improving and that she was working on an "upgraded" Home Exercise Program.  See Tr. at 507.

In addition to physical therapy, according to evidence in the record, Plaintiff's medications also have been effective in treating her symptoms.  For instance, a March 13, 2012 letter from Plaintiff's treating physician Raul B. Zelaya, M.D., states that Plaintiff "report[ed] that her fibromyalgia syndrome is stable as long as she takes her medications." Tr. at 469.  Plaintiff testified at the hearing that her pain medication has been helpful, although she stated that she does not "want to get addicted" to it, so she "tr[ies] not to take it every single day" and instead "tr[ies] just to take Advil or something."  Tr. at 42.  Even if Plaintiff's treatments do not negate her impairments, the ALJ properly considered the effectiveness of treatment in determining whether Plaintiff's subjective complaints are credible.

Plaintiff contends that she was "entitled to substantial credibility" due to her "honorable work history with sustained earnings for 26 years prior to the time she became disabled." Pl.'s Mem. at 17 (citing Tr. at 172-73).   "Work history is one of many factors for a law judge to consider."  Davis v. Colvin, No. 8:13-cv-02892-EAK, 2015 WL 628762, at *14 (M.D. Fla. Feb. 12, 2015) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)).  Here, although the ALJ did not discuss Plaintiff's work history specifically in relation to his credibility finding, he considered her work history in his overall determination that Plaintiff is not disabled.  See Tr. at 27-28.  Because the ALJ provided sufficient basis for his credibility finding, he did not err by not addressing Plaintiff's work history in reaching this finding.  See Davis, 2015 WL

628762, at *14; <u>Coleman v. Astrue</u>, No. 8:11-cv-1783-T-TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) (unpublished).

The undersigned also recognizes that, while finding Plaintiff "not entirely credible," Tr. at 22, the ALJ nonetheless gave Plaintiff "some benefit of the doubt" by "includ[ing] additional limitations to the [RFC]."  Tr. at 26.  Overall, considering Plaintiff's testimony and other evidence of record, the undersigned finds that substantial evidence supports the ALJ's credibility finding.

## B.  Medical Opinions

Plaintiff claims the ALJ erred in his analysis of the medical opinions in the following ways: (1) by assigning little weight to the opinion of treating orthopedic surgeon Dr. Zelaya, Pl.'s Mem. at 11-14; (2) by relying on the opinions of non-examining consultants Thomas Renny, D.O., and Robert Rymer, M.D., <u>id.</u> at 12-13; (3) by "mischaracteriz[ing] the record by finding the opinions from the Administration's own examining consultant, [Timothy McCormick, D.O.], unsupported and based on solely on [Plaintiff]'s subjective complaints," <u>id.</u> at 15 (citing Tr. at 24); and (4) by "finding the consistent opinions from examining orthopedic surgeons[] [Ronald Joseph, M.D., and A. Joshua Appel, M.D.,] inconsistent with treatment notes from the Orthopaedic Institute and the report from consultant Dr. McCormick," <u>id.</u> at 14 (citing Tr. at 25).

1.  Applicable Law

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians['] [opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's

---

[3]  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[4]  A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

As to non-treating physicians, an examining physician's opinion is not entitled to deference, see McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted), and "the opinions of nonexamining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone

do not constitute substantial evidence," Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); see also Moore, 405 F.3d at 1212; Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

2.  Dr. Zelaya (Treating Doctor)

Plaintiff asserts that treating physician Dr. Zelaya's opinions were entitled either to controlling weight or, at least, great weight. Pl.'s Mem. at 13-14. Dr. Zelaya treated Plaintiff between April 2010 and September 2012, initially for left hip pain and later for fibromyalgia. See Tr. at 501; Tr. at 463-65 (April 15, 2010 treatment record from Plaintiff's initial visit with Dr. Zelaya, focusing on left hip pain); Tr. at 333-35 (copy of same treatment record); Tr. at 336-37 (August 16, 2011 letter from Dr. Zelaya); Tr. at 470 (December 15, 2011 letter from Dr. Zelaya); Tr. at 460 (copy of same letter); Tr. at 469 (March 13, 2012 letter regarding her

fibromyalgia); Tr. at 487 (copy of same letter).[5]  According to a questionnaire form completed by Dr. Zelaya on September 27, 2012, he treated Plaintiff "[e]very 6 months & PRN [meaning, 'when necessary' or 'as needed']."  Tr. at 501, 506.

Dr. Zelaya wrote in the December 15, 2011 letter that Plaintiff was diagnosed in November 2010 with "a left hip avascular necrosis" and that in December 2010 "[s]he underwent a total hip replacement (TRK) arthroplasty."  Tr. at 470.  The letter states, in a passage quoted in the ALJ's Decision, see Tr. at 24-25, that Plaintiff continued to experience pain after the surgery and was advised among other things to avoid "squatting, slight bending, . . . sitting or standing for prolonged periods of time, or riding or driving for prolonged periods of time."  Tr. at 470.  The letter also states that Plaintiff was "beginning to respond to a combination of medication."  Tr. at 470.  According to the March 13, 2012 letter from Dr. Zelaya, Plaintiff "report[ed] that her fibromyalgia syndrome is stable as long as she takes her medications."  Tr. at 469.[6]  The letter states that Plaintiff "was advised to return to [Dr. Zelaya's] office on [an as-needed] basis if not sooner if she experiences any exacerbation of her pain that is now clearly related to a fibromyalgia syndrome."  Tr. at 469.

Dr. Zelaya completed a Fibromyalgia Impairment Questionnaire on September 27, 2012.  See Tr. at 501-06.  Dr. Zelaya stated in the questionnaire that Plaintiff suffers from "[c]hronic widespread [sic] musculoskeletal pain that has lasted more than two (2) years affecting her above and below the waist line," and he stated that Plaintiff's prognosis is "poor

---

[5]     Dr. Zelaya's letters in the administrative transcript do not indicate an addressee.

[6]     The ALJ wrote that in this letter "the doctor noted that [Plaintiff] reported that her fibromyalgia is stable and she [is] no longer taking her medications."  Tr. at 25 (citation omitted).  Although Dr. Zelaya did not specifically state that Plaintiff was not taking her medications, he stated that they "had a lengthy discussion regarding the necessity of taking the combination of medications as recommended."  Tr. at 469.

for complete recovery and cure." Tr. at 501 (capitalization omitted).  Dr. Zelaya detailed

where on Plaintiff's body she experiences pain and tenderness, Tr. at 502-03, and he listed

other symptoms Plaintiff experiences such as "insomnia, depression, fatigue, headache,

diarrhea, constipation, [and] bladder pain," Tr. at 502 (capitalization omitted).  Dr. Zelaya

indicated on the form that Plaintiff can frequently lift and carry up to five pounds, occasionally

up to ten pounds, but never more than ten pounds. Tr. at 504.  He also indicated that Plaintiff

is "[c]apable of low stress jobs"; that at "unpredictable" intervals during a workday Plaintiff

may require "[r]eclining/[b]edrest" for between one and two hours; and that she cannot push,

pull, kneel, bend, or stoop.  Tr. 504-06.  According to Dr. Zelaya, these limitations apply to

Plaintiff as far back as November 17, 2011.  Tr. at 506.  As to the basis for Dr. Zelaya's

diagnoses and opinions, where the form asked him to "[i]dentify the laboratory and diagnostic

test results which demonstrate and/or which support [his] diagnosis," Dr. Zelaya wrote,

"Fibromyalgia is a clinical diagnosis (NO SPECIFIC TEST)." Tr. at 502.

The ALJ gave "little weight" to Dr. Zelaya's opinions because the ALJ found they are

"quite conclusory, providing very little explanation of the evidence relied on in forming those

opinions," and the ALJ also found that, despite the treatment relationship, "the record reveals

that actual treatment visits have been relatively infrequent."[7]  Tr. at 25.  Following this, as

---

[7]     Dr. Zelaya indicated on the September 27, 2012 questionnaire that he has treated Plaintiff "[e]very six months & [as needed]." Tr. at 501.  The administrative transcript includes documents signed by Dr. Zelaya from five dates between April 2010 and September 2012: April 15, 2010; August 16, 2011;  December 15, 2011; March 13, 2012; and September 27, 2012.  See Tr. at 463-65 (April 15, 2010 treatment record); Tr. at 333-35 (copy of same); Tr. at 336-37 (August 16, 2011 letter); Tr. at 470 (December 15, 2011 letter); Tr. at 460 (copy of same); Tr. at 469 (March 13, 2012 letter); Tr. at 487 (copy of same); Tr. at 501-06 (September 27, 2012 Fibromyalgia Impairment Questionnaire).

though to support his assessment, the ALJ summarized Dr. Zelaya's August 2011 treatment

record as follows:

> [Plaintiff] presented to Dr. Zelaya for a second opinion regarding intractable
> pain affecting the left hip in August 2011.  In the examination, [Plaintiff]
> reported that she has been unable to perform her job as a dental hygienist as
> the job requires remaining in the sitting position or standing position for
> prolonged periods of time.  On examination, there was no significant pain upon
> rotation or compression of the left total hip replacement arthroplasty; however,
> there was significant and exquisite pain upon compression of the left
> trochanteric bursa.  [Plaintiff] was advised to return on an as needed basis.

Tr. at 25 (citation omitted); see Tr. at 336-37 (treatment report dated August 16, 2011).

Plaintiff contends that Dr. Zelaya's opinions were not  "conclusory" because the

September 2012 Fibromyalgia Impairment Questionnaire is "detailed" regarding Plaintiff's

"diagnoses, prognosis, limitations, and the medical findings supporting the opinions."  Pl.'s

Mem. at 11-12 (citing Tr. at 501-05).  Plaintiff also contends that "[t]he ALJ failed to identify

any evidence in the medical records that contradict the evidence relied on by Dr. Zelaya or

that such findings are insufficient."  Id. at 12.  Plaintiff asserts that "fibromyalgia cannot be

documented by any other means than chronic widespread pain and the presence of tender

points."  Id. at 12 (citing Moore, 405 F.3d at 1211; Price v. Astrue, No. 3:09-cv-59, 2010 WL

3715643, at *7 (M.D. Ga. Aug. 16, 2010)).

Plaintiff's arguments are unavailing.  First, regardless of whether the questionnaire

contains certain details about, for example, the locations of Plaintiff's "tender points," Tr. at

502 (capitalization omitted), Dr. Zelaya did not explain how he formed his opinions, nor did

he articulate reasons for the physical and occupational limitations he assigned to Plaintiff.

Dr. Zelaya left unclear how his conclusions account for certain observations from the

treatment records, such as Plaintiff's indication "that her fibromyalgia syndrome is stable as

long as she takes her medications."  Tr. at 469 (March 13, 2012 letter of Dr. Zelaya).

Furthermore, likely due to the "relative[] infrequen[cy]" of treatment noted by the ALJ, Tr. at

25, the record contains few treatment records or other documents from Dr. Zelaya, see supra

note 7.  As such, the doctor's opinions indeed appear conclusory and inconsistent with his

own records.

Second, even if fibromyalgia diagnoses cannot be discounted for lack of objective

evidence, the ALJ's determination here did not rely solely, if at all, on this basis.  Instead, the

ALJ properly focused on the lack of explanation and infrequency of treatment.  See Ricker

v. Comm'r of Soc. Sec., No. 5:13-cv-479-OC-18PRL, 2014 WL 6610849, at *5 (M.D. Fla.

Nov. 21, 2014) (unpublished) (finding that the ALJ did not err in discounting a treating opinion

regarding fibromyalgia because "the lack of medical evidence was not the sole reason the

ALJ assigned little to no weight to [the] opinion").

Accordingly, the undersigned finds that the ALJ did not err in discounting Dr. Zelaya's

treating opinion.

### 3.  Drs. Renny and Rymer (Non-Examining Doctors)

In arguing that the ALJ "failed to identify any other substantial evidence contradicting

the opinions from Dr. Zelaya," Plaintiff asserts that the ALJ "apparently relied heavily on the

opinions from the non-examining consultants as these are the only medical opinions

consistent with light RFC found by the ALJ."  Pl.'s Mem. at 12; see Tr. at 83-84 (December

12, 2011 agency consultant report indicating Plaintiff is capable of light work); Tr. at 96-97

(copy of same report, adding signature of Dr. Rymer on May 30, 2012); Tr. at 466-67 (May

30, 2012 Case Analysis signed by Dr. Rymer).  Plaintiff contends that the ALJ's reliance on

these opinions "was particularly misplaced" because both were based on reviews of an

incomplete record.  Pl.'s Mem. at 13.  One of these consultants, Dr. Renny, conducted his review on December 12, 2011, Tr. at 83, and he appears to have reviewed medical records at least through September 29, 2011, see Tr. at 81 (noting a consultative examination report dated September 29, 2011).  The other consultant Plaintiff refers to, Dr. Rymer, conducted his review on May 30, 2012, Tr. at 466, and he appears to have reviewed treatment records at least through December 15, 2011, see Tr. at 467 (noting Dr. Zelaya's treatment record dated December 15, 2011).

In the Decision, the ALJ stated that he "accorded some weight" to the agency medical consultants because "the doctors are disability specialists who reviewed the evidence of record and considered all the objective facts at the time they rendered their opinion."  Tr. at 26.  The ALJ then stated, "However, giving [Plaintiff] the benefit of the doubt, the undersigned has included additional limitations to the [RFC] assessment . . . ."  Tr. at 26.

Although it is clear that non-examining consultants' opinions "standing alone do not constitute substantial evidence," Sharfarz, 825 F.2d at 280 (citation omitted), the ALJ did not rely solely on these opinions, either in his assessment of Dr. Zelaya's opinion or in his ultimate conclusions.  Because the agency consultants reviewed evidence within the period relevant to Plaintiff's disability claim, and because the ALJ also rested his findings on other evidence of record, including Plaintiff's testimony regarding her daily activities, the ALJ did not err in assigning some weight to the non-examining consultants' respective opinions.

### 4.  Dr. McCormick (Examining Doctor)

Plaintiff also disputes the ALJ's analysis of Dr. McCormick's opinion.  See Pl.'s Mem. at 15.  Dr. McCormick conducted a consultative examination of Plaintiff on September 29,

2011.  See Tr. at 23 (ALJ's Decision); Tr. at 447-50 (Social Security Consultative Report); Tr. at 451-53 (Range of Motion Report Form).  Dr. McCormick observed that Plaintiff had "a marked limp on the left leg," "a very slow stride," and "marked limitations about the left hip." Tr. at 448-49.  The doctor also observed that Plaintiff had "no deficits" in grip strength, "normal dexterity," full range of motion in her upper extremities, and full strength in upper and lower extremities.  Tr. at 448-49.  He noted Plaintiff's complaints of pain and tenderness in the right forearm and elbow.  Tr. at 449.  Dr. McCormick summarized his findings as follows: "[Plaintiff] presents with a history of avascular necrosis with surgical repair.  She has a significantly abnormal gait as noted.  She appears to have significant functional limitations based on her presentation."  Tr. at 449; see Tr. at 24 (ALJ's Decision).

The ALJ "accorded some weight" to the opinion of Dr. McCormick but stated that "there is a concern that the doctor relied too heavily on [Plaintiff's] subjective report of her symptoms and limitations, uncritically accepting as true most, if not all, of what [Plaintiff] reported."  Tr. at 24.  The ALJ further stated that "the medical evidence of record does not contain the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were as limited as alleged by the doctor."  Tr. at 24.

Plaintiff contends that Dr. McCormick "provided detailed examination findings that support his opinions."  Pl.'s Mem. at 15.  Despite being fairly detailed, however, Dr. McCormick's observations regarding Plaintiff's strength and dexterity appear inconsistent with his conclusion that she has "significant functional limitations," suggesting that this conclusion is based instead on Plaintiff's complaints of pain.  Tr. at 448-49.  Considering Dr.

McCormick's observations, other evidence of record, and the ALJ's credibility finding as to Plaintiff, the ALJ did not err in assigning only "some weight" to Dr. McCormick's opinion.

### 5. Drs. Joseph and Appel (Examining Doctors)

Plaintiff additionally disputes the ALJ's finding as to the joint opinion of examining orthopedic surgeons Drs. Joseph and Appel.  Pl.'s Mem at 14.  Drs. Joseph and Appel examined Plaintiff on one occasion, on February 5, 2013, and the documents in the record based on that examination are signed by both doctors.  See Tr. at 490-92 (treatment report signed by both doctors); Tr. at 494-500 (Hip Impairment Questionnaire signed by both doctors on February 5, 2013).[8]  On examination, the doctors observed, for instance, that Plaintiff had "a severely antalgic gait," was restricted in hip movement and unable to bear weight on her left leg, and experienced pain and tenderness in various places.  Tr. at 491. In their assessment, the doctors stated, among other limitations, that Plaintiff could not "sit or stand for any prolong[ed] period of time without severe exacerbation of pain and discomfort," and that she could not walk substantial distances "because of what appear[ed] to be a[n] effect within the femoral shaft or loosening of the femoral prosthesis if in fact this was all cemented."  Tr. at 491-92.  They further indicated that Plaintiff could occasionally lift up to twenty pounds and carry up to ten pounds, that she is "[i]ncapable of even 'low [work] stress,'" and that she cannot kneel, bend, or stoop.  Tr. at 497-99.  The doctors also noted Plaintiff's "[f]ibromyalgia by history."  Tr. at 491.

---

[8]      In addition to this cited copy of the questionnaire, the record also includes two apparently identical copies, except that the first of these additional copies is missing the first page and, on the last page, Dr. Appel's signature is missing.  See Tr. at 472-84.

The ALJ gave "little weight" to the opinion of Drs. Joseph and Appel because the ALJ found that the medical evidence of record did not support the doctors' conclusions. Tr. at 25. Specifically, the ALJ observed as follows:

> [T]he treatment notes from the Orthopaedic Institute indicate that [Plaintiff] walked with a <u>mild</u> limp on the left and she had excellent range of motion of the left hip on examination.  There was no mention of an assistive device for ambulation.  In the consultative examination, [Plaintiff] had an abnormal gait; however, she was not using an assistive device for ambulation.

Tr. at 25 (citations omitted); <u>see also</u> Tr. at 422 (treatment report from the Orthapaedic Institute, signed by Plaintiff's hip surgeon Edward M. Jaffe, M.D., on September 19, 2011, noting Plaintiff's "mild limp" and "excellent range of motion").  As with Dr. McCormick's opinion, the ALJ also concluded that the opinion authored by Drs. Joseph and Appel merited little weight because it "appears to be based in part on [Plaintiff]'s subjective report of her symptoms and limitations."[9]  Tr. at 26.

Plaintiff contends that the ALJ erred by finding this opinion "inconsistent with treatment notes from the Orthapaedic Institute and the report from consultant Dr. McCormick."  Pl.'s Mem. at 14 (citing Tr. at 25).  The ALJ, however, did not specifically find the opinion inconsistent with that of Dr. McCormick, nor did he base his assessment on any such inconsistency.  Furthermore, even to the extent the opinions may be consistent with one another, the ALJ's assessment properly addressed inconsistent evidence in the record and the extent to which the opinion rested on Plaintiff's subjective reporting.  Accordingly, the

---

[9]     When discussing this treatment note, the ALJ referred only to Dr. Joseph, not Dr. Appel.  Tr. at 25-26.  As noted, however, the document is signed by both doctors.  Tr. at 492.

undersigned finds the ALJ did not err in assigning "little weight" to the opinions of Drs. Joseph and Appel.

## C. VE's Testimony / ALJ's Step Five Findings

As noted, Plaintiff additionally disputes the ALJ's reliance on the VE's testimony in the ALJ's step five findings. Specifically, Plaintiff contends that the testimony was "[f]lawed" because the hypothetical provided to the VE omitted Plaintiff's "moderate difficulties in concentration, persistence, or pace." Pl.'s Mem. at 17 (emphasis omitted) (citing Tr. at 20).

In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy. See Wilson, 284 F.3d at 1227 (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted).

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a

multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citations omitted). "[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1269 (11th Cir. 2015); Winschel, 631 F.3d at 1180 (citation omitted). The hypothetical question must, for instance, account for a claimant's moderate difficulties in concentration, persistence, and pace. See Winschel, 631 F.3d. at 1180-81.

While the hypothetical question must include all of a claimant's impairments, it need not include impairments properly rejected by the ALJ. See McSwain v. Bowen, 814 F.2d 620 n.1 (11th Cir. 1987) (per curiam). Moreover, "questions that 'implicitly account[] for the claimant's limitations' are sufficient to meet this requirement." Henry, 802 F.3d at 1269 (quoting Winschel, 631 F.3d at 1180-81); see also Thornton v. Comm'r, Soc. Sec. Admin., 597 F. App'x 604, 612 (11th Cir. 2015) (unpublished). In Thornton, "the ALJ determined that the evidence demonstrated that [the plaintiff] could engage in simple, non-detailed tasks, despite 'moderate' limitations in concentration, persistence, and pace." 597 F. App'x at 612. "The hypothetical the ALJ posed specified that the VE should assume that [the plaintiff] could only perform 'simple, non-detailed tasks.'" Id. Because substantial evidence supported that determination, the Court held that "the ALJ's hypothetical was not deficient because it did not specifically refer to [the plaintiff]'s limitations in maintaining concentration, persistence, and pace." Id.

Here, Plaintiff argues that the hypothetical left out the ALJ's finding of "moderate difficulties in concentration, persistence, or pace" and instead "only restricted [Plaintiff] mentally to simple, routine, and repetitive tasks, and only infrequent and gradual changes in the workplace." Pl.'s Mem. at 17-18 (citing Tr. at 20, 54-55).  The undersigned notes, however, that while the ALJ found Plaintiff "has moderate difficulties" in "concentration, persistence or pace," the ALJ also specifically found that "[d]espite [Plaintiff]'s mental impairments, she is capable of sustaining focused attention and concentration sufficiently long enough to permit the timely and appropriated completion of simple, routine, and repetitive tasks commonly found in work settings."  Tr. at 20-21.  In support, the ALJ observed that Plaintiff can "pay bills and handle a savings account," and he noted that she can also "help her daughter with her homework and prepare meals."  Tr. at 21 (citations omitted); see Tr. at 205-07, 216 (Function Report completed by Plaintiff).  Because substantial evidence supports the ALJ's determination that Plaintiff can handle "simple, routine, and repetitive tasks" despite her moderate mental difficulties, the hypothetical was not deficient in omitting to mention Plaintiff's moderate difficulties in concentration, persistence, or pace.  See Thornton, 597 F. App'x at 612.

### V.  Conclusion

In accordance with the foregoing, it is hereby **RECOMMENDED THAT**:

1.      The Clerk of Court be directed to enter judgment pursuant to sentence four of

42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk be directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on January 21, 2016.


*James R. Klindt*

JAMES R. KLINDT
United States Magistrate Judge


clr
Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of record