**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TAMMY ELAINE MUSGROVE,

                Plaintiff,

v.                                           Case No. 3:15-cv-30-J-34JRK

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____/

# O R D E R

**THIS CAUSE** is before the Court on the Report and Recommendation (Doc. 18; "Report"), entered by the Honorable James R. Klindt, United States Magistrate Judge, on January 21, 2016. In the Report, Magistrate Judge Klindt recommends that the Court affirm the decision of the Commissioner of the Social Security Administration ("the Commissioner") finding Plaintiff Tammy Elaine Musgrove not disabled. On February 4, 2016, Plaintiff filed objections to the Report. See Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Doc. 19; "Objections"). The Commissioner then filed a response to the Objections on March 10, 2016. See Memorandum in Response to Plaintiff's Objection to the Magistrate's Report and Recommendation (Doc. 21; "Response to Objections").

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, the district court must review legal

conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at * 1 (M.D. Fla. May 14, 2007).

Upon independent review of the file and for the reasons stated in the Magistrate Judge's Report, the Court will overrule the Objections and accept and adopt the conclusions recommended by the Magistrate Judge, as further explained in this Order, and affirm the Commissioner's decision. The Magistrate Judge correctly concluded that substantial evidence supports the ALJ's evaluation of Plaintiff's credibility and the medical-opinion evidence. Report at 6–22. The Magistrate Judge also correctly concluded that the ALJ did not pose an incomplete hypothetical question to the vocational expert at the administrative hearing, so the vocational expert's testimony constituted substantial evidence supporting the ALJ's finding that Plaintiff can perform available jobs. Report at 22–24.

**I.    ALJ's Evaluation of Medical Opinions**

Plaintiff objects to the Magistrate Judge's recommendation that the Court find that substantial evidence supports the ALJ's evaluation of various medical opinions. Objections at 2–6. Specifically, she contends that the Magistrate Judge improperly concluded that substantial evidence supports the ALJ's decision to discount the opinions of treating physician Dr. Raul Zelaya and examining physicians Drs. Timothy McCormick, Ronald Joseph, and A. Joshua Appel and rely more heavily on the opinions of non-examining physicians Drs. Thomas Renny and Robert Rymer. Id.

An ALJ must consider several factors to decide the weight given to a medical opinion: the physician's examining and treating relationship with the claimant, if any; the

opinion's supportability and consistency; the physician's specialization; and any other factor that supports or contradicts the opinion. 20 C.F.R. § 404.1527(c). As noted by the Magistrate Judge, good cause to discount a treating physician's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004). An ALJ does not "play doctor" when evaluating a claimant's residual functional capacity, Castle v. Colvin, 557 F. App'x 849, 853–54 (11th Cir. 2014), and is not required to defer to any medical opinion in determining a claimant's residual functional capacity, see 20 C.F.R. § 404.1527(d)(3).

### A.    Dr. Zelaya

The ALJ gave little weight to Dr. Zelaya's opinions in the September 27, 2012, Fibromyalgia Impairment Questionnaire because he found them to be conclusory and because Dr. Zelaya had only seen Plaintiff for treatment infrequently. Tr. 25. Plaintiff challenges only the ALJ's finding that Dr. Zelaya's opinions are conclusory. See Objections at 3–4. Substantial evidence supports the ALJ's finding on that issue. The Fibromyalgia Impairment Questionnaire essentially states no more than the basis for Dr. Zelaya's diagnosis of fibromyalgia: his observations of "chronic[,] widespread musculoskeletal pain lasting more than two … years," Tr. 501, and several bilateral "tender points," Tr. 502. In other words, he found that Plaintiff had experienced long-lasting pain over several areas of her body. Nowhere on the form is there any discussion of the basis for Dr. Zelaya's opinions with respect to either the severity of Plaintiff's pain or its effect on Plaintiff's functional abilities. See Tr. 501–06. Aside from the general

observations noted above, the form is no more than a series of conclusions as to Plaintiff's ability to lift and carry weight, perform postural activities, and tolerate stress, as well as her need to move around and take breaks during a work day.[1] Although it is true that a patient's subjective complaints of pain are "an essential diagnostic tool in fibromyalgia cases," see Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009), it does not follow that a physician's opinions based solely on subjective complaints are invariably entitled to controlling weight, particularly where, as here, there is no indication of what those complaints might have been (or, indeed, whether such complaints were even the basis for the opinion). The lack of any explanation for Dr. Zelaya's opinions concerning the way in which Plaintiff's fibromyalgia affects her functioning provides substantial evidence for the ALJ's finding that those opinions are conclusory.

Moreover, Dr. Zelaya's own treatment notes also fail to support his opinions. As an initial matter, Dr. Zelaya indicated that Plaintiff had "chronic[,] widespread musculoskeletal pain that has lasted more than two … years affecting her above and below the waist line," Tr. 501, but his treatment notes contain no mention of any pain beyond her left hip until August 26, 2011—about one year before he completed the form. See Tr. 333–34, 336, 460, 469. His treatment notes contain relatively unremarkable observations and no significant complaints from Plaintiff that would warrant the limitations found, and he consistently recommended only conservative treatment. On April 15, 2010, he observed some pain to the touch at the left hip and noted that Plaintiff reported that squatting and sitting aggravated the pain, while walking or moving her leg away from her

---

[1] Although the Fibromyalgia Impairment Questionnaire includes a section where the physician can indicate the total time that a patient can sit and stand in a typical eight-hour workday, Dr. Zelaya did not complete that portion of the form. See Tr. 504.

body relieved it. Tr. 333–34. He observed a full range of motion, motor strength, and muscle strength in her left leg. Tr. 334. He performed a local steroid injection, recommended use of cold packs as needed, prescribed medication, and directed her to avoid <u>prolonged</u> standing, high-impact activities, crossing her legs, or sitting in certain types of seats. Tr. 334. On August 16, 2011, he observed that Plaintiff had undergone a total left-hip replacement in December 2010 but continued to experience "intractable pain." Tr. 336. He observed an antalgic gait and "significant and exquisite pain" upon compression of one area of her left hip, but she had no significant pain upon rotation or compression of the hip replacement. Tr. 336. He observed that she reported losing her job based on her inability to tolerate "prolonged periods" of sitting or standing. Tr. 336. He recommended use of an arch support on her left foot, pain patches, mineral baths, moist heat application, and Advil as needed, and he advised her to avoid sitting in soft chairs. Tr. 337. On December 15, 2011, Dr. Zelaya wrote a letter repeating his prior observations (it is unclear whether he actually examined her on that date). Tr. 460. In addition to his prior recommendations, he advised her to engage in only slight bending, and to avoid squatting and prolonged sitting, standing, riding, and driving. Tr. 460. He observed that she was "under treatment for fibromyalgia" but was "beginning to respond to a combination of medication." Tr. 460. Finally, as the Magistrate Judge noted, <u>see</u> Report at 16–17, Dr. Zelaya's most recent treatment note before he completed the Fibromyalgia Impairment Questionnaire indicated that Plaintiff's fibromyalgia was "stable as long as she takes her medications," and Dr. Zelaya "had a lengthy discussion [with Plaintiff] regarding the necessity of taking the combination of medications as recommended."[2] Tr.

---

[2] The ALJ stated that this treatment note showed that Plaintiff was "no longer taking her medications." Tr. 25. Dr. Zelaya's mention of a "lengthy discussion" about the need to comply with

469. Significantly, the ALJ's residual-functional-capacity finding is consistent with Dr. Zelaya's observations and recommendations. See Tr. 21 (including limitations of no crouching, crawling, or operation of foot controls; only occasional balancing, stooping, or kneeling[3]; and a 30-minute sit/stand option). Because substantial evidence supports the ALJ's decision to give little weight to Dr. Zelaya's opinions, the Court will overrule Plaintiff's objection and adopt the Magistrate Judge's recommendation on that point.

### B.    Drs. Joseph and Appel

The ALJ gave little weight to the opinions of Drs. Joseph and Appel because he found them inconsistent with the other medical evidence in the record and because they were based on Plaintiff's subjective complaints, which the ALJ found to be not entirely credible. Tr. 25. Specifically, he observed that a treatment note from September 2011 showed that Plaintiff had only a "mild" limp and had "excellent range of motion of the left hip," Tr. 422, and Dr. McCormick's evaluation indicated that, although Plaintiff had a "significantly abnormal gait," she did not use an assistive device, Tr. 448–49.

Substantial evidence supports the ALJ's decision to give little weight to the opinions of Drs. Joseph and Appel. Plaintiff reported to them that she had occasional severe pain in her neck and lower back with accompanying tingling and numbness in her arms; daily headaches; persistent chest pain and discomfort; severe hip pain causing her

---

medications (along with Plaintiff's own admission that she did not always take her medications as directed, see Tr. 42) permits the inference that Plaintiff had not been fully compliant with prescribed medications, and Plaintiff does not argue otherwise, see generally Objections.

[3] The ALJ actually indicated that Plaintiff should not climb, crouch, or crawl, and that she could perform other postural activities occasionally. Tr. 21. Although he did not list those other postural activities, Dr. Renny's opinion lists the typical categories of postural activities: (1) climbing ramps or stairs; (2) climbing ladders, ropes, or scaffolds; (3) balancing; (4) stooping; (5) kneeling; (6) crouching; and (7) crawling. Tr. 94. Based on that list, the Court determines that the ALJ's finding that "[t]he other postural activities would be occasional" referred to balancing, stooping, and kneeling.

to be unable to walk or bear weight on that leg; and an inability to take part in physical activities. Tr. 490. Drs. Joseph and Appel examined Plaintiff once and made some significant clinical findings, including (1) that Plaintiff was in "distinct distress"; (2) that Plaintiff had a "severely antalgic gait" and could not bear weight on her left leg; (3) that Plaintiff had restricted range of motion in her left hip; (4) that Plaintiff had some point tenderness in her lower back and tenderness to the touch at her shoulders; (5) that Plaintiff had some pain upon flexion and internal rotation of her right hip; and (6) some positive neurological signs. Tr. 491–92. Those observations, although perhaps supportive of some of the significant limitations they found, are inconsistent with nearly every other medical record available. As the ALJ noted, Plaintiff had been observed with a mild to significant limp, but she did not use assistive devices. Indeed, Drs. Joseph and Appel opined that Plaintiff might need a cane, see Tr. 496, but she reported in September 2011 that she had previously been prescribed a cane and a walker but that she no longer used them, Tr. 217. In addition, Dr. Zelaya's records indicate that Plaintiff had some significant pain but otherwise had full range of motion and strength. Tr. 333–34, 336.

Moreover, some of the opinions of Drs. Joseph and Appel are inconsistent with their own observations and with Plaintiff's testimony. For instance, Drs. Joseph and Appel found Plaintiff unable to independently initiate ambulation, Tr. 496, despite that they observed that she could walk without an assistive device (albeit with a "severely antalgic gait"), Tr. 491. They also found that Plaintiff could not bathe herself, could only sit for less than one hour and stand for less than one hour total in an eight-hour day, and her pain constantly interfered with her attention and concentration. Tr. 496–98. But at the administrative hearing, Plaintiff testified that she could stand and walk for 10 to 15 minutes

at a time and then sit for about 20 minutes at a time, and she indicated that she "usually … [has] to lay down in the afternoon." Tr. 46. She also testified that she could bathe herself but needed help getting out of the bath tub, and she stated that she did not believe she had difficulty maintaining attention, although her family believed she sometimes did. Tr. 45, 47. Because substantial evidence supports the ALJ's decision to give little weight to the opinions of Drs. Joseph and Appel, the Court will overrule Plaintiff's objection and adopt the Magistrate Judge's recommendation on that point.

### C.    Dr. McCormick

The ALJ gave some weight to Dr. McCormick's opinions. Tr. 24. However, in doing so, he expressed concern that Dr. McCormick "relied too heavily on the claimant's subjective report of her symptoms and limitations, uncritically accepting as true most, if not all, of what the claimant reported." Tr. 24.

As an initial matter, Dr. McCormick offered only one general opinion. After reiterating Plaintiff's "significantly abnormal gait," he opined that she "appears to have significant functional limitations based on her presentation." Tr. 449. He provided no opinion with respect to any specific functional limitation. See Tr. 447–53. Although the ALJ gave this opinion only "some weight," he nevertheless found that Plaintiff has "significant functional limitations" in that he restricted her to a substantially reduced range of light work involving limited postural activities, the option to change positions between sitting and standing every half hour, no use of foot controls, and simple, routine, repetitive tasks. Tr. 21–22. Plaintiff does not contend that that residual functional capacity does not account for "significant functional limitations," nor does she suggest any additional limitations the ALJ should have included based on Dr. McCormick's opinion. See

Objections at 4. Instead, she simply takes issue with the ALJ's characterization of the record. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009). The Court will not remand for reconsideration of Dr. McCormick's opinion without some indication that any alleged error by the ALJ in evaluating that opinion affected the outcome of the case. Cf. Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's error is harmless if it does not affect the outcome).

Regardless, substantial evidence supports the ALJ's decision to give only some weight to Dr. McCormick's opinion. Aside from Plaintiff's documented left-hip pain and associated limitations in movement, Dr. McCormick's examination of her revealed no other significant abnormalities. Plaintiff complained of pain in her low back and right arm and reported that she is easily fatigued. Tr. 447–48. Nevertheless, on examination she appeared "in good general health," although she did appear uncomfortable and was guarded with her motions. Tr. 448. She had full range of motion, strength, sensation, and reflexes in both arms. Tr. 449. She had full range of motion in her right leg and full strength, sensation, and reflexes in both legs. Tr. 449. She had no tenderness in her spine and full range of motion except for thoracolumbar extension and lateral flexion. Tr. 449. Those findings would not support greater limitations than the ALJ found. Because substantial evidence supports the ALJ's decision to give some weight to Dr. McCormick's opinions, the Court will overrule Plaintiff's objection and adopt the Magistrate Judge's recommendation on that point.

### D.    Drs. Renny and Rymer

The ALJ gave some weight to the opinions of Drs. Renny and Rymer. Tr. 26. He observed that they are "disability specialists who reviewed the evidence of record," but, "giving [Plaintiff] some benefit of the doubt," he included some greater limitations than they found. Tr. 26.

Substantial evidence supports the ALJ's decision to give some weight to the opinions of Drs. Renny and Rymer. As discussed above, most of the medical evidence shows significant left-hip pain and associated limitations in movement, but otherwise no significant limitations in Plaintiff's strength or movement. See Tr. 333–34, 336, 422, 448–49, 451–53, 460, 469. The opinions of Drs. Renny and Rymer adequately accounted for those impairments.

Plaintiff contends that the ALJ erred in relying more heavily on the opinions of Drs. Renny and Rymer, who did not examine Plaintiff, than the opinions of her examining and treating physicians. Objections at 5–6. She argues that opinions of non-examining physicians generally are entitled to little weight when contrary to a treating physician's opinions and that, alone, they do not amount to substantial evidence for a decision. Id. However, the regulations provide that an ALJ must consider the same factors in evaluating any medical opinion. See 20 C.F.R. § 404.1527(c), (e). Many courts in the Eleventh Circuit have determined that a non-examining physician's opinions, when combined with other evidence, can provide substantial evidence for a decision. See Packer v. Astrue, No. 11-0084-CG-N, 2013 WL 593497, at *3 (S.D. Ala. Feb. 14, 2013) (citing cases), aff'd, 542 F. App'x 890 (11th Cir. 2013). That Drs. Renny and Rymer did not examine Plaintiff is only one of many factors the ALJ could have considered in

evaluating their opinions, see 20 C.F.R. § 404.1527(c)(1), and it is an insufficient reason on its own to reject their opinions. The ALJ relied on the opinions of Drs. Renny and Rymer in addition to other evidence, including Plaintiff's own statements and the clinical findings of Dr. McCormick and others. He was not prohibited from giving those opinions greater weight under these circumstances. Cf. Forrester v. Comm'r of Soc. Sec., 455 F. App'x 899, 902–03 (11th Cir. 2012) ("The evidence supported a contrary conclusion to [the treating physician's] opinion, and the ALJ was not prohibited from reaching that conclusion simply because non-treating physicians also reached it.").

Plaintiff also contends that the ALJ erred in relying on the opinions of Drs. Renny and Rymer because their opinions were based on review of "a markedly undeveloped record." Objections at 5. Dr. Renny discussed evidence as late as September 2011, and Dr. Rymer discussed evidence as late as December 2011. Tr. 94, 467. Contrary to Plaintiff's assertion, Drs. Renny and Rymer did not review an undeveloped record. Indeed, the great majority of the medical evidence was already in the record when they provided their opinions. The only evidence not mentioned in Dr. Rymer's analysis is (1) Dr. Zelaya's March 13, 2012, treatment note, Tr. 469; (2) Dr. Zelaya's Fibromyalgia Impairment Questionnaire, to which the ALJ gave only little weight, Tr. 501–06; (3) the reports from Drs. Joseph and Appel, to which the ALJ also gave little weight, Tr. 471–85, 489–500; and (4) a single physical therapy record showing improved gait and a recommendation for an upgraded home exercise program, Tr. 507. The only additional evidence regarding Plaintiff's physical condition not in the record when Dr. Renny provided his opinions was Dr. Zelaya's December 15, 2011, letter. Aside from the opinions from Drs. Zelaya, Joseph, and Appel, which the ALJ discounted, none of that

evidence contains clinical findings or opinions inconsistent with the opinions of Drs. Renny and Rymer. Because substantial evidence supports the ALJ's decision to give some weight to the opinions of Drs. Renny and Rymer, the Court will overrule Plaintiff's objection and adopt the Magistrate Judge's recommendation on that point.

## II.    ALJ's Evaluation of Plaintiff's Credibility

Plaintiff objects to the Magistrate Judge's recommendation that the Court find that substantial evidence supports the ALJ's evaluation of her credibility. Objections at 6–7. In evaluating a claimant's subjective complaints of pain or other symptoms, an ALJ must determine whether there is an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom arising from that condition or (2) evidence that the condition is so severe that it can be reasonably expected to cause the alleged symptom. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the alleged severity of a claimant's symptom, but an impairment can be reasonably expected to cause that alleged severity, an ALJ must evaluate the intensity and persistence of her alleged symptoms and their effect on her ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ must consider all available evidence, including objective medical evidence and statements from the claimant and others. 20 C.F.R. § 404.1529(c)(2)–(3). An ALJ also must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). If an ALJ discredits a claimant's testimony about the intensity, persistence, and limiting effects of a symptom, such as pain, he must provide "explicit and adequate reasons for doing so." Holt, 921 F.2d at 1223. "A clearly articulated

credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995). A reviewing court should ask not whether the ALJ could have reasonably credited a claimant's testimony, but whether the ALJ was clearly wrong in discrediting it. Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011).

Here, after summarizing Plaintiff's testimony, the ALJ determined that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms[,] … [her] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible." Tr. 22. After discussing the relevant medical evidence in the record, the ALJ concluded that, "[d]espite the severity of [Plaintiff's] subjective complaints, there is minimal objective evidence of a disabling impairment." Tr. 26. He continued that Plaintiff's "activities of daily living are not as limited as one would expect given her complaints," pointing to her ability to perform "light housekeeping activities," prepare meals with help, and oversee her daughter's homeschooling. Tr. 26. The ALJ also observed that a treatment note from Copeland Medical Clinic "indicate[d] that physical therapy was beneficial." Tr. 26.

Plaintiff argues that the ALJ erred in relying on the perceived lack of objective evidence supporting Plaintiff's subjective complaints because some objective evidence did support her statements, and because the regulations prohibit an adverse credibility determination based solely on a lack of substantiating objective evidence. Objections at 6. But the ALJ did not rely solely on the lack of objective evidence. Instead, he relied on that lack of evidence in combination with Plaintiff's daily activities and her improvement with physical therapy. Tr. 26. Substantial evidence supports the ALJ's determination that

the medical evidence in the record did not support Plaintiff's subjective complaints. As discussed, with the single exception of the treatment note from Drs. Joseph and Appel in February 2013, the record does not contain any clinical findings that would support the extreme limitations Plaintiff identified. Most of the medical records show significant left-hip pain and associated limitations in movement, but otherwise no significant limitations in Plaintiff's strength or movement. See Tr. 333–34, 336, 422, 448–49, 451–53, 460, 469. Moreover, even Plaintiff's own complaints as documented in those treatment notes generally do not rise to the same level of severity she claimed at the administrative hearing. Although other evidence might have provided some "objective support for [Plaintiff's] allegations," see Objections at 6, the Court may not reweigh the evidence or substitute its opinion for the ALJ's.

The ALJ also properly relied on Plaintiff's reported daily activities. See 20 C.F.R. § 404.1529(c)(3)(i). Although it is true that a claimant's ability to perform "everyday activities of short duration, such as housework or fishing" is not sufficient on its own to disqualify a claimant from disability, see Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), the ALJ considered those activities along with other factors.[4] When combined with the medical evidence and Plaintiff's improvement with treatment, Plaintiff's ability to perform light housework, cook, get ready, shop for groceries and other household necessities, go to church, and oversee her daughter's homeschooling, even with frequent

---

[4] In Lewis, the ALJ rejected an examining physician's opinion because (1) he opined only that the claimant could not return to his prior work and did not offer an opinion as to whether the claimant could perform any work; (2) the claimant was able to complete a six-minute treadmill exercise without discomfort; and (3) the claimant reported that he was able to perform activities such as housework and fishing. Lewis, 125 F.3d at 1441. The Eleventh Circuit Court of Appeals concluded that those reasons did not provide substantial evidence for the ALJ's evaluation of the opinion because the physician had opined elsewhere that the claimant was "completely disabled," and the ability to complete a short exercise test and participate in the limited activities described was not inconsistent with the doctor's limitations. Id.

breaks and occasional assistance, see Tr. 44–49, provided additional support for the ALJ's decision to reject Plaintiff's alleged limitations.

The ALJ also properly relied on a treatment note indicating that physical therapy was beneficial. See 20 C.F.R. § 404.1529(c)(3)(v). Plaintiff contends that the "fact that physical therapy was helpful also does not mean that [she] is no longer disabled." Objections at 7. But that argument misses the mark. Although responsiveness to treatment alone might not necessarily indicate that a claimant is able to work, it absolutely is relevant in determining the severity of the claimant's symptoms. The note the ALJ cited states that Plaintiff's gait was improving, and the physical therapist recommended an "upgraded" home exercise program. Tr. 507. That evidence supports the ALJ's decision because it suggests that Plaintiff was able to tolerate a greater level activity than her testimony indicates.

Plaintiff contends that she was "entitled to substantial credibility" based on her long work history. Objections at 7. As previously mentioned, the relevant question is not whether the ALJ could have reasonably credited Plaintiff's testimony, but rather whether the ALJ was clearly wrong in discrediting it. See Werner, 421 F. App'x at 939. Although Plaintiff's work history certainly could support a finding that she has not intentionally exaggerated her symptoms or limitations in an effort to obtain benefits, it does not compel the conclusion that the ALJ was clearly wrong to discredit her testimony. Indeed, the ALJ gave Plaintiff "some benefit of the doubt," Tr. 26, which suggests that he did not believe that she was intentionally malingering. Instead, he simply rejected her own assessment of the extent of her functional limitations based on evidence in the record that suggested that she was capable of greater activity. Moreover, the ALJ discussed Plaintiff's work

history in determining whether she could perform available jobs, so he was aware of that history when evaluating her credibility. Cf. Coleman v. Astrue, No. 8:11-cv-1783-T-TGW, 2012 WL 3231074, at *4 (M.D. Fla. Aug. 6, 2012) (ALJ did not err in failing to discuss claimant's work history when making credibility finding because ALJ "obviously considered" the claimant's work history in making decision; no authority requires an ALJ to discuss work history in evaluating credibility; and claimant admitted that she stopped working because she was laid off).

## III.    Hypothetical Posed to Vocational Expert

Plaintiff's final objection is to the Magistrate Judge's recommendation that the Court find that the ALJ's hypothetical question to the VE adequately accounted for Plaintiff's moderate limitation in concentration, persistence, or pace by including restrictions to "simple, routine, repetitive tasks" and "infrequent and gradually introduced" changes in the workplace. Objections at 7–8. The Magistrate Judge concluded that those limitations were sufficient because the ALJ had found that "[d]espite [Plaintiff's] mental impairments, she is capable of sustaining focused attention and concentration sufficiently long enough to permit the timely and appropriate[ ] completion of simple, routine, and repetitive tasks commonly found in work settings." Report at 24 (citing Tr. 20–21).

Plaintiff cites Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), in arguing that the ALJ posed an incomplete hypothetical by failing to include Plaintiff's moderate limitation in concentration, persistence, and pace. Objections at 8. But, as the Magistrate Judge observed, Winschel also held that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that

limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." <u>Winschel</u>, 631 F.3d at 1180 (emphasis added). In other words, an ALJ's hypothetical question is not deficient if the ALJ concludes that a claimant's moderate limitation in maintaining concentration, persistence, and pace does not ultimately affect the claimant's ability to work. <u>See</u> <u>id.</u> at 1181. Here, because the ALJ found that Plaintiff could engage in simple, routine, repetitive tasks "[d]espite [her] mental impairments," the Court concludes, as did the Magistrate Judge, that the ALJ's hypothetical adequately accounted for Plaintiff's moderate limitation in concentration, persistence, and pace.[5] <u>Cf.</u> <u>Thornton v. Comm'r, Soc. Sec. Admin.</u>, 597 F. App'x 604, 612 (11th Cir. 2015) ("Here, unlike in <u>Winschel</u>, the ALJ determined that the evidence demonstrated that Thornton could engage in simple, non-detailed tasks, despite 'moderate' limitations in concentration, persistence, and pace. … Therefore, the ALJ's hypothetical was not deficient because it did not specifically refer to Thornton's limitations in maintaining concentration, persistence, and pace.").

## IV.   Conclusion

Upon independent review of the Report, the Court will overrule the Objections and accept and adopt the legal conclusions recommended by the Magistrate Judge to the extent stated in this Order.

Accordingly, it is hereby **ORDERED**:

---

[5] The Magistrate Judge also concluded that substantial evidence supports the ALJ's finding that Plaintiff can perform simple, routine, repetitive tasks despite her moderate limitation in maintaining concentration, persistence, and pace. Report at 24. Plaintiff does not appear to argue that the evidence the ALJ relied on and the Magistrate Judge noted did not amount to substantial evidence supporting the ALJ's finding. <u>See generally</u> Objections. Nevertheless, for the reasons discussed in the Magistrate Judge's Report, the Court concludes that substantial evidence supports the ALJ's finding on that issue.

1. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Doc. 19) are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Doc. 18) is **ADOPTED** as the opinion of the Court to the extent set forth in this Order.

3. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on March 28, 2016.

MARCIA MORALES HOWARD
United States District Judge

lc21

Copies to counsel of record